C. J. TOWER & SONS *v.* UNITED STATES (No. 4696)[1]

United States Court of Customs and Patent Appeals, June 24, 1952

---
[1] C. A. D. 493.

*John C. Ray* for appellant.

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard F. Weeks* and *Alfred A. Taylor, Jr.*, special attorneys, of counsel), for the United States.

[Oral argument April 10, 1952, by Mr. Ray and Mr. Weeks]

Before GARRETT, Chief Judge and O'CONNELL, JOHNSON, and WORLEY, Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, rendered pursuant to its decision (C. D. 1334) affirming the classification and assessment of duties by the collector on merchandise exported from Canada and entered at the port of Buffalo, New York. The involved merchandise was invoiced and entered as "Dressed Merch. Spruce Lumber" and the collector levied duty at the rate of 33⅓ per centum ad valorem under the provisions of paragraph 412 of the Tariff Act of 1930 for "manufactures of wood * * * not specially provided for." The importing firm protested that rate of duty, claiming the merchandise to be properly dutiable at 50 cents per thousand feet, board measure, as provided for in paragraph 401 of that act, as amended by the Canadian Trade Agreement, T. D. 49752, which, so far as pertinent reads as follows:

* * * sawed lumber and timber not specially provided for; all the foregoing, if of fir, spruce, pine, hemlock, or larch

plus $1.50 per thousand feet, board measure, under the provision for lumber in section 3424, Internal Revenue Code, as modified by the Canadian Trade Agreement, *supra*.

In its opinion, the court below succinctly described the facts leading up to the involved importation and the ultimate use to which it was dedicated as follows:

* * * Certain emergency temporary housing was to be shipped abroad from the United States. Such material was required to be packaged in accordance with detailed blue print specifications supplied by the Federal Public Housing Authority. The packages in which the housing material was to be shipped were each to consist of a wooden form or framework, reinforced with angle irons and steel banding, the inside of the form or framework to be covered by asphalt board, building paper, and waterproof paper so as to cover the contents except for certain ventilation and drainage openings. The merchandise in issue consists of the wooden parts of the form or framework which were imported from Canada by the domestic supplier of the housing material which was ultimately to be shipped abroad.

It is undisputed that the merchandise here involved consists of the wooden parts to make 80 of the packages in which the housing material was to be shipped. The other materials for the packages, such as metal parts and the asphalt board and building and waterproof paper, were not included in the importations at bar, and were to be supplied from domestic or other sources.

Before the trial court, two witnesses were called by the importer: Charles Stewart, office manager of the importing firm, and Paul A.

Hymans, one of the two partners of that firm. Several exhibits were offered in evidence, the most pertinent being exhibit 2, a blue print specification pertaining to the involved merchandise, and exhibit 5, a board cut to a particular specification.

The witness Stewart testified that he was the office manager of the P. A. Hymans Company of Detroit at the time of the involved importation and was also secretary of the Hymans Lumber Ltd., of Windsor, Ontario; that he had received the order and the specifications for the merchandise and had ordered it from the mill in Canada in conformance therewith; that the wood was cut in accordance with the specifications to make up crate frames; that the wood was cut diagonally, halved or beveled, or what is known in the trade as shiplap; that no piece of the merchandise was straight cut on both ends; that the material as imported would go to make up the framework of the shipping crate as called for by the specifications; and that the pieces of lumber were shipped in bundles according to size, each bundle being numbered to correspond with the numbers set out in the blue print.

Paul A. Hymans testified that he had been in the lumber business for fourteen years; that the involved merchandise was designed for a specific purpose and was manufactured to certain lengths to perform a specific function.

The Government's first witness was the customs examiner at the port of Buffalo who classified the involved merchandise. He stated that the pieces of wood in the importation were further advanced than his conception of the meaning of "lumber" in the strict sense of that word; and that it had been cut for and was intended to be put to a particular use.

Charles Felton, mill superintendent for the Dohn Fischer Lumber Company of Buffalo, New York, next testified for the Government. He stated that he had had twenty-eight years lumber experience; and that the merchandise at bar, in his opinion, was cut exactly for a specific purpose and was manufactured to a certain point.

In overruling the protest of the importer, the court stated in its decision:

It can scarcely be doubted that by reason of the many and varied cuts and grooves made in the wood in Canada, it lost its identity as lumber material and was not only dedicated to the construction of frameworks for the export packages, but was definitely appropriated for that purpose. The article that was created was a framework, complete or substantially complete in itself, and recognized as such as a part of another article—the export package.

The question presented here, as below, is whether the imported merchandise is merely lumber, as claimed by appellant, or a manufacture of wood, not specially provided for, as classified by the collector.

It is contended by counsel for appellant that the merchandise,

being parts of a package, and not being specially provided for as such under the Tariff Act of 1930, must necessarily be classified under the most applicable paragraph of that act, which is paragraph 401. He argues that the application of the principles of *ejusdem generis* and *expressio unius est exclusio alterius* to the involved facts here before us preclude the operation and applicability of paragraph 412, *supra*.

Those arguments have been carefully considered by us but we are of the opinion, as was held below, that by reason of the cutting and shaping processes to which the material was subjected prior to its importation it was removed from the category of lumber and became a manufacture of wood dedicated to a definite and specific use and possessing a character and name completely different from the material out of which it was made.

Counsel for appellant attempts to distinguish the case of *C. J. Tower & Sons et al.* v. *United States*, 69 Treas. Dec. 308, T. D. 48152, which involved an importation of lumber cut to specifications to make a *complete crate*, from the facts in this case where the lumber was designed to make only the *framework* for crates.

Again we agree with the correctness of the court's decision that such alleged distinction is not a valid one because the determination of the classification ultimately depends upon whether the cutting and shaping processes to which the material was subjected removed it from the category of lumber and thereby created an article made from lumber—not merely an article complete and useful of itself—but one having a name, use, and character distinct from the material from which it was made.

Counsel for appellant alleges error by the Customs Court in the interpretation and application, not only of the involved statutes, but also in regard to the other cases, cited by him. We have found no error in either respect.

For the reasons hereinbefore set out, the judgment of the Customs Court is *affirmed*.